ACTION MANUFACTURING, INC.,
Plaintiff, Appellee,

v.

FAIRHAVEN TEXTILE CORPORA-
TION, Defendant, Appellant.

ACTION MANUFACTURING, INC.,
Plaintiff, Appellee,

v.

FAIRHAVEN TEXTILE CORPORA-
TION, Defendant, Appellee.

Brawer Bros., Inc., Third-Party
Defendant, Appellant.

Nos. 85–1429, 85–1430.

United States Court of Appeals,
First Circuit.

Argued Sept. 11, 1985.

Decided Feb. 20, 1986.

As Amended Feb. 25, 1986.

On Motion to Withdraw
Portion of Opinion May 14, 1986.

Edward A. Haffer, with whom Sheehan, Phinney, Bass & Green, Professional Ass'n, Manchester, N.H., was on brief, for Fairhaven Textile Corp.

Irving Brawer, with whom James J. Barry, Jr., Manchester, N.H., was on brief, for Brawer Bros., Inc.

Peter Karl Marsh, with whom Marsh & Segal, Concord, N.H., was on brief, for Action Mfg., Inc.

Before COFFIN, Circuit Judge, WISDOM *, and ALDRICH, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

In this suit by Action Manufacturing, Inc., tried to the court, for breach of warranty of fabrics which were, concededly, "expressly warranted by [defendant] Fairhaven [Textile Corporation] and [third party defendant] Brawer Bros. [Inc.] to be first quality," the first ten pages of Fairhaven's brief are devoted to a claim of lack of timely notice of breach. Although, actually, this was a non-issue, it is such a conspicuous example of improper advocacy that we, too, will discuss it at the outset.

Paragraph 11 of the complaint commenced, "11. Immediately upon discovery of said defects in the nylon Plaintiff notified Defendant ...." Defendant's answer read, "11. As to any defects, denied. As to notification of a problem, admitted ...." This answer was never amended, nor sought to be amended. The pretrial statement of issues made no mention of notice, let alone alleged untimeliness. Neither did defendant's opening to the court.

During trial evidence was introduced, with relation to another issue, which, standing alone, might support a contention that plaintiff's notice of breach was tardy. That issue was not mentioned, however, until defendant's post trial argument and requests. The court's response was a short rejection. More than half of Fairhaven's brief is now devoted to this alleged error.

Passing the fact that the court's rejection on the merits would not appear to have been error in any event,[1] pressing it disregards the elementary principle that, unless by agreement, actual, or implicit from conduct, a matter once conceded is not later in dispute simply because some evidence, admitted on another issue, could be claimed to contradict it. 6 Wright & Miller, Federal Practice and Procedure § 1443, p. 466 (1971); see Vargas v. McNamara, 608 F.2d 15, 18 n. 3 (1st Cir.1979); cf. F.R.Civ.P. 15(b). Otherwise an attempted withdrawal of an admission in the pleadings after the case has closed is the unfairest kind of surprise, even, perhaps, for a court that is conducting a bench trial and might wish elucidation,[2] and particularly unfair to unsuspecting counsel.

This was without excuse. During oral argument a colloquy revealed that, prior to the pretrial statement of issues, defendant had discovered grounds for claiming that its admission in its answer was incorrect, but had concluded to remain silent. Asked why, counsel said,

---

* Of the Fifth Circuit, sitting by designation.

**1.** Fairhaven's argument presupposes that plaintiff was engaged in self-destruction, not an easy contention.

**2.** *See, e.g.,* in another connection,

The Court: I want to ask you a question, because I can ask questions. I'm the one that's going to decide this.

"[W]e had a reason for not tipping our hand."

Court. "You wanted to fool the court?"

Counsel. "No, we did not. We did not want to be fooled by the [plaintiff.]"

It would be difficult to conceive of a more unabashed piece of sharpness. Don't change your pleading, or let the other party know what he has to meet, or he'll fool you—with counter-evidence. Yet Fairhaven would claim that plaintiff's "implication of surprise at Fairhaven's notice argument is ironic and disingenuous." This is not even sense, let alone fair.

■ For defendants to pursue this matter on appeal is not merely frivolous, it is an imposition on appellee and the court. For such a severe disregard of counsel's duty it is appropriate to charge counsel personally with attorney's fees as part of appellee's costs. 28 U.S.C. § 1927; *see United States v. Nesglo, Inc.*, 744 F.2d 887, 892 (1st Cir.1984); *Good Hope Refineries, Inc., v. Brashear*, 588 F.2d 846, 848 (1st Cir.1978).

■ Turning to the merits, defendants raise two principal points: that the court erred in finding their goods faulty, and in overstating the damages. Here, at least, defendants recognize settled law, that they must show the findings to have been clearly erroneous. F.R.Civ.P. 52(a). Unfortunately, they adopt the not uncommon practice of assuming the correctness, or superior quality, of their own evidence; one cannot read their briefs without a feeling of being asked to review the case de novo. For example, we are told at length how defendants' expert had higher qualifications than plaintiff's. This is not the stuff by which "clearly erroneous" is established.

Even worse is the brief of third party Brawer Bros. which, as the initial actor and party ultimately responsible, took the laboring oar as to the quality of the material. The principal defective goods were 70 denier lightweight nylon, finished by Fairhaven and supplied to plaintiff in 1979 as first quality. Plaintiff laminated the material (glued it to paper) and supplied it to shoe manufacturers, largely in Europe. When it bubbled, plaintiff, admittedly after many tests, claimed the material to have been defective. Defendants, in response, charged improper processing by plaintiff.

One of the pretrial tests ultimately conducted involved Fairhaven's 1982 material and a sample of its 1979 material. A witness for plaintiff having conceded that the later material was first quality, Brawer asserts that the witness conceded thereby that the earlier was first, as well. This concession, it says, follows from Brawer's testimony that the two materials were the same.

■ Brawer went even further. In its reply brief it complains vigorously that plaintiff's brief wrongly charged it with admitting the use of second-grade yarn in its 70 denier fabric. Yet Irving Brawer had testified, "[T]here is no question in my mind whatever that some fabrics were made out of yarn that was designated by DuPont as second quality." His preceding and subsequent testimony made clear that this phraseology was an admission, not a denial. The admission does not disappear because Brawer testified that this second-grade yarn was first quality, (with which compare his testimony, "[E]verything we buy from DuPont is bought without any warranties on their part except when we specifically ask for first quality yarn from DuPont to be used in some of our other operations."). Nor was the admission struck by Brawer's testimony that it is possible to make first quality goods out of second-grade yarn.

■ An appeal so presented does not make necessary our recitation of the evidence contained in seven volumes of transcript and many exhibits that might be due an appellant who presents supported representations of manifest error. The significant fact is that there was ample evidence supporting the court's findings, both on liability and damages. Nor did the court make any improper rulings. The court was warranted in concluding that plaintiff suffered more than the dollar loss attributable

to the goods directly involved. A customer who finds the milk turned one day may look elsewhere for it another.

■ Plaintiff conceded at oral argument that it would not pursue its cross appeal of the court's grant of Fairhaven's counterclaim. The judgment is affirmed in all respects, with costs to Action.[3] Fairhaven's counsel is charged personally with attorney's fees in the amount of $2,000. This, we may add, is punitive, *see Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir.1984); *cf. United States v. Nesglo, Inc.*, ante, 744 F.2d at 892, and not a business expense. *Cf. Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958).

*Affirmed.*

### ON MOTION TO WITHDRAW PORTION OF OPINION

PER CURIAM.

Following our opinion in this case, which we concluded by charging appellant's counsel personally with attorney's fees as costs for making an improper contention, counsel moved that we withdraw that portion of the opinion, and the assessment, and, presumably in case we did not, for a rehearing en banc.[1] Out of regard for counsel, following their hearing the tape of the oral argument, we again reviewed it, and the entire record and briefs, as well as the petition itself. While we do not grant the motion to withdraw, it may be appropriate further to state our reasoning.

Without repeating the facts in detail contained in the original opinion, this was an action, tried to the court, for breach of warranty. The court found in favor of plaintiff, appellee. Paragraph 11 of the complaint had alleged, inter alia, due notice of breach. Paragraph 11 of defendant appellant's answer denied some of the other assertions, but admitted notice. The pre-

trial statement of disputed issues made no reference to notice, nor did defendant's opening; nor was it adverted to at trial.

Defendant was a supplier of materials that went into plaintiff's product. The complaint sought damages for allegedly defective materials furnished in the early fall of 1979. Prior to the pretrial plaintiff expanded its damage claim to include a small amount of goods supplied the preceding spring. No objection was made by defendant that this was outside the pleadings, or that there had been tardy notice. In its post-trial argument, however, defendant asserted, for the first time, that notice had been late. The court, without discussion, found proper notice.

On appeal defendant extensively briefed that plaintiff's case must fail for lack of timely notice. This prompted the judge who ultimately wrote the opinion to review the record, and, at argument, he, and a second judge, asked detailed questions why defendant had not raised the issue of notice until after trial. This produced the response, noted at greater length in our opinion, that counsel did not want to "tip ... our hand."

■ On the record, the extent of plaintiff's awareness in the spring of defects in defendant's material was so slim that we might wonder whether there could have been an issue of a duty of earlier discovery, and of consequent need of notice.[2] We were disturbed, however, by quite another matter. As a general principle the presentation of claims beyond the complaint without objection is considered an informal amendment of the complaint. See *Lynch v. Dukakis*, 719 F.2d 504, 508 (1st Cir. 1983); F.R.Civ.P. 15(b). In the absence of notice to the contrary, it may be assumed that defendant does not choose to amend its answer. Anything else would be incon-

---

**3.** Strictly, we would have assessed double costs, but Fairhaven does prevail on the minor cross-appeal.

**1.** Counsel also requested permission to hear the tape of the oral argument, which we granted,

and this thereafter occurred. No further response followed.

**2.** Plaintiff knew it had problems with its own product, but did not realize they were traceable to defendant's material.

sistent with the universal principle that the issues in a case are to be made known in advance.

Defendant's claim now is that all that its answer admitted was due notice as to the fall goods, ("said defects") and was inapplicable to goods supplied earlier. Even taking this at its face value we would consider such a contention lacking in the necessary candor, but defendant's position is far more extreme. "Actions' answer to interrogatory [claiming damages for June] put all parties on notice that notice had now become an issue." "[D]espite the timely notice on the *September* items, Action would be barred for *any* remedy," (viz., for the fall items, as well as the spring's.) (Emphasis in orig.) As a legal proposition, for which, incidentally, defendant cites no authority, this seems an extraordinary position. The spring goods, and the fall goods, were separate orders, and separate shipments. At the very least, and we cannot emphasize this too highly, if notice was considered no longer admitted as to the fall goods, this would be in flat contradiction to an answer which stood unamended.

█ In light of the pleadings, and the pretrial silence, it was difficult to think how defendant's counsel could have thought his position with respect to the September goods so obvious that plaintiff's counsel were on actual, as distinguished from possible legal, notice that notice as to these goods was now an issue. We accordingly inquired as to this during oral argument, and counsel conceded they maintained silence to avoid tipping their hand, in the hope that plaintiff would not try to "fool" them, viz., by offering (false) evidence to meet it. In other words, counsel was hoping to fool the plaintiff. This method of trying cases has been outlawed in the federal court by the Rules of Civil Procedure since 1940.

At the least, defendant's pursuing this matter on appeal must be characterized as frivolous. Under such circumstances we, and other circuits, have felt that counsel should be charged, whether under 28 U.S.C. § 1927, or F.R.A.P. 38. *Good Hope*

*Refineries, Inc. v. Brashear,* 588 F.2d 846, 848 (1st Cir.1978); *Limerick v. Greenwald,* 749 F.2d 97, 102 (1st Cir.1984); *Commonwealth Elec. Co. v. Woods Hole, etc. Steamship Authority,* 754 F.2d 46, 49 (1st Cir.1985); *United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 494–95 (2d Cir. 1983), *cert. denied,* 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1329 (3 Justices voting to award respondent damages for frivolous appeal, Sup.Ct. Rule 49.2); *Tedeschi v. Barney,* 757 F.2d 465, 466 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 147, 88 L.Ed.2d 122; *Hughes v. Hoffman,* 750 F.2d 53, 55 (8th Cir.1984); *McConnell v. Critchlow,* 661 F.2d 116, 118–19 (9th Cir. 1981); *In re Oximetrix, Inc.,* 748 F.2d 637, 644 (Fed.Cir.1984). In *Gianfriddo v. Western Union Tel. Co.,* 787 F.2d 6 (1st Cir. 1986), we noted that counsel or client should determine the responsibility; here it is clearly counsel's.

Our opinion will stand, subject to pending motion for review en banc.