**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1047

MIRIAM GRICE,

          Plaintiff - Appellant,

     v.

BALTIMORE COUNTY, MARYLAND; FRED HOMAN, Individually and in
his official capacity; SUZANNE BERGER, Individually and in
her official capacity,

          Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   J. Frederick Motz, District Judge.
(1:07-cv-01701-JFM)

Argued: October 28, 2009          Decided: December 3, 2009

Before TRAXLER, Chief Judge, and DUNCAN and AGEE, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Kathleen Mary Cahill, LAW OFFICES OF KATHLEEN CAHILL,
Towson, Maryland, for Appellant.   Jeffrey Grant Cook, BALTIMORE
COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees.   **ON
BRIEF:** John E. Beverungen, County Attorney, BALTIMORE COUNTY
OFFICE OF LAW, Towson, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

## I. FACTS

The appellant, Miriam Grice, worked as a claims manager for Baltimore County, Maryland ("the County") from March 1998 until August 2005, when her position was converted from a part-time classification to one within the County's merit system. During the relevant timeframe, co-defendant Fred Homan was a senior administrator with the County and co-defendant Suzanne Berger was employed as an attorney with the County. Before transitioning to the County's merit system in 2005, Grice held the title of "Claims Manager" and was responsible for handling workers' compensation claims for the County.

As required during the transition to the merit system, the County reclassified and "posted" the job of Claims Manager for competitive application.[1] Co-defendants Homan and Berger, along with the County's Insurance Administrator, Bob Behler, interviewed the candidates.[2] Despite Grice's rating by the County's human resources department as the best qualified applicant prior to the candidates' interviews, she was not

---

[1] To avoid confusion due to the pre- and post-merit system job titles of "Claims Manager," we will refer to the merit system position as that of "Claims Manager" and to Grice's former job as her "former position."

[2] The County's procedure in hiring for a "posted" position was to interview the top three candidates.

2

hired.  Instead, the County hired Kent Underwood, a male who had no prior experience handling government claims but who had twenty-three years as claims manager and assistant vice-president at a large private insurer.

Grice was appointed Assistant Claims Manager, in which she remained the supervisor of workers' compensation claims for the County and reported to Underwood.  Grice viewed this position as a demotion because the salary was less than her salary prior to the transition to the merit system.[3]  Her salary was, however, the highest allowed for her pay grade under the legislatively enacted pay scale applicable to the merit system and, unlike her former position, had additional benefits including a property interest in her employment.

A month after taking the job as Assistant Claims Manager Grice complained to the County Executive that she had been the

---

[3] The County contends that the Claims Manager position under the merit system was, in fact, Behler's former job (previously titled Insurance Administrator) which supervised not only workers' compensation claims but also all the general liability claims involving the County.  As such, the County insists the Claims Manager position would have been a promotion for Grice. Grice insists the Claims Manager position was, in fact, her "old" position supervising the unit handling worker's compensation claims.  We do not consider this factual dispute important, however, because if the County unlawfully discriminated against Grice in the selection process, it is immaterial whether the job was the same or would have been a promotion.  Nonetheless, the County's position appears to be correct.

victim of sex discrimination due to Underwood's selection for the Claims Manager position. She also filed a complaint with the Equal Employment Opportunity Commission. As a result of the charges, Homan removed himself as Grice's supervisor and appointed another employee, Keith Dorsey, to supervise Grice. In response to a complaint from a co-worker that Grice had been harassing her for information about Underwood, Dorsey placed Grice on paid leave pending the outcome of an investigation. Grice was subsequently issued a written reprimand. As a result, Grice amended her EEOC charge to allege a claim of retaliation.

On June 13, 2007, Grice was called to a meeting with Dorsey and Mary Ellen Niles, who had replaced Underwood as Claims Manager (and thus became Grice's supervisor). When Grice arrived she saw disciplinary papers on the desk and immediately asked that her lawyer be present for the meeting, as Dorsey had previously allowed.[4] Dorsey acquiesced to this demand but directed Grice to take the disciplinary papers with her for review in preparation for the meeting — an order Grice refused. For disobeying his order to take the papers, Dorsey suspended

---

[4] The papers included "Supervisor's Notes on Oral Counseling" and a Written Reprimand which documented various incidents of sanctionable behavior by Grice between May 22, 2007 and June 13, 2007.

Grice and, the next day, terminated her employment for insubordination.[5]

Two weeks after her discharge Grice filed an Amended Complaint in the United States District Court for the District of Maryland asserting claims against the County, Homan and Berger.[6] Count One of Grice's Amended Complaint asserts claims against Homan and Berger, individually and in their official capacities, for violation of Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Grice contends that Homan and Berger violated her civil rights by unlawfully discriminating against her based on gender when they did not select her for the Claims Manager position. Count Two asserts a claim against the County for unlawful discrimination in violation of Title VII. Grice's Title VII claims are based on allegations that the County discriminated against her by (a) hiring a less qualified male, Underwood, as Claims Manager ("non-selection claim"), (b) demoting her to Assistant Claims Manager ("demotion claim"), (c) retaliating against her by imposing a suspension based upon her

---

[5] At oral argument, Grice confirmed that no dispute exists as to this sequence of events at the June meeting.

[6] Grice originally filed suit on June 27, 2007, but the suit was dismissed because she failed to exhaust her administrative remedies. Grice subsequently exhausted her administrative remedies and the EEOC issued a right-to-sue letter on April 28, 2008.

co-worker's complaints ("retaliation claim"), and (d) by terminating her on June 13, 2007 ("discharge claim").

The district court granted summary judgment to Homan, Berger and the County on all claims. Specifically, the district court found Grice's non-selection claim under Title VII was time-barred based on her failure to file an administrative charge with the EEOC within 300 days of the alleged violation.[7] The district court then determined that even if the claim had not been time-barred, "the Defendants would still be entitled to summary judgment on this claim as well as on Grice's timely filed demotion, suspension, discharge and retaliation claims . . . . " Joint Appendix ("J.A.") at 748.

Grice appeals the district court's judgment in some, but not all, respects. She does not challenge the district court's finding that her non-selection claim under Title VII was time-barred. Nonetheless, Grice asserts the district court erred in granting summary judgment on her claims against Homan and Berger arising under 42 U.S.C. § 1983. For the reasons set forth below, we disagree and affirm the district court.

---

[7] Grice learned she had not been selected for the Claims Manager position on October 13, 2005 but did not file a claim with the EEOC until 349 days later, September 27, 2006. J.A. 746.

As an initial matter we note that Grice's two "Issues Presented for Review" as set forth in her opening brief challenge only the non-selection and discharge claims. Although the arguments in Grice's opening brief tend to overlap in various respects, her failure to address the demotion and retaliation claims results in the abandonment of those claims on appeal. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ("[T]he argument . . . must contain . . . 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'") (quoting Fed. R. App. P. 28(a)(9)(A)). The "[f]ailure to comply with the specific dictates of [Rule 28] with respect to a particular claim triggers abandonment of that claim on appeal." Id. Indeed, Grice confirms in her reply brief that "[t]here are two issues on this appeal – whether summary judgment was properly granted on [her] claims (1) that she was denied the Claims Manager position in September 2005 because of sex discrimination, and (2) that she was fired in June 2007 because of retaliation for alleging bias in the Claims Manager selection." Reply Br. at 1.

Accordingly, we address only the non-selection and discharge claims.

A district court's grant of summary judgment is reviewed de novo." Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998) (citing Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995)). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law." Id. (citing United States v. Leak, 123 F.3d 787, 794 (4th Cir. 1997)). The elements of a prima facie case under Title VII are the same under 42 U.S.C. § 1983. Gairola v. Commw. of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985).

Although at the time she filed her Amended Complaint Grice apparently believed that Berger had been involved in the decision not to hire her, she admitted during oral argument that subsequent evidence shows "there is not evidence that Ms. Berger had a role in the sex discrimination and retaliation claim."[8] As such, the district court's entry of summary judgment in favor of Berger was correct. See Holland v. Washington Homes, Inc., 487

---

[8] On brief and in oral argument Grice refers to the non-selection claim as the sex discrimination claim and categorizes the demotion, suspension and discharge claims as retaliation claims.

F.3d 208, 216 (4th Cir. 2007) (employer put forth evidence that its decisionmaker fired employee for non-discriminatory reason); Geiger v. Tower Auto., 579 F.3d 614, 620-21 (6th Cir. 2009) ("Any discriminatory statements must come from decisionmakers to constitute evidence of discrimination."). Thus, the only question is whether the district court properly granted summary judgment as to Homan on Grice's non-selection and discharge claims.

## A. Grice's Non-Selection Claim

Lacking direct evidence of discrimination, the district court assumed without deciding that Grice had made out a prima facie case under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which required Grice to prove that she (1) was a member of a protected class, (2) had suffered an adverse employment action, (3) had maintained a satisfactory job performance, and (4) that a similarly-situated employee outside the protected class received more favorable treatment. White v. BFI Waste Services, LLC, 375 F.3d 288, 295 (4th Cir. 2004) (citing McDonnell Douglas Corp., 411 at 802). Pursuant to the McDonnell Douglas framework the district court then found, and the record clearly supports, that the County had articulated "legitimate, non-discriminatory reason[s] for the decision: namely that while both Grice and Underwood were strong applicants on paper, Underwood had a much

9

better interview; his experience was better suited for the position; and he did not have a history of problematic employee relations as did Grice." J.A. 749-50.

To rebut the County's legitimate non-discriminatory reasons for hiring Underwood, Grice argues that Behler, Homan and Berger (the panelists who conducted her interview) were biased against her and that their "motivation was discriminatory." Br. of Appellant at 23. However, as the district court found, Grice "does not provide any evidence that the bias was based on her gender." J.A. 750.

In her Amended Complaint Grice asserts that in 1999 she became aware that Behler may have been romantically involved with another employee. According to Grice, she reported this allegation to Homan who "rebuked [her] for the manner in which she had handled the matter, and threatened to abolish her job." J.A. 12. According to Grice, Homan removed Behler as her direct supervisor until 2004. When Behler resumed his supervision of Grice, she alleges that he "treated [her] disfavorably on account of her role in reporting his alleged sexual misconduct." J.A. 12.

Grice further asserts in her Amended Complaint that "Homan and Berger also had significant bias against [her], rendering it impossible for them to fairly consider plaintiffs' superior qualifications for the position." J.A. 12. However, according

10

to Grice, this bias arose because "[j]ust months before the selection panel convened . . . [Grice] accidentally interrupted [Homan and Berger] in an awkward scene after work hours . . . ." J.A. 12. According to Grice, it was "from that point on [that Homan and Berger] launched a campaign to get rid of [her]." J.A. 13.

> The general rule is that "a party is bound by the admissions of his pleadings." Best Canvas Products & Supplies v. Ploof Truck Lines, 713 F.2d 618, 621 (11th Cir. 1983). See also Action Manufacturing, Inc. v. Fairhaven Textile Corp., 790 F.2d 164, 165 (1st Cir. 1986); PPX Enterprises, Inc. v. Audiofidelity, Inc., 746 F.2d 120, 123 (2d Cir. 1984); Brown v. Tennessee Gas Pipeline Co., 623 F.2d 450, 454 (6th Cir. 1980) ("under federal law, stipulation and admissions in the pleadings are generally binding on the parties and the Court."); State Farm Mutual Automobile Ins. Co. v. Worthington, 405 F.2d 683, 686 (8th Cir. 1968) (". . . judicial admissions are binding for the purpose of the case in which the admissions are made including appeals.").

Lucas v. Burnley, 879 F.2d 1240, 1242 (4th Cir. 1989). Grice's allegations establish that any bias on the part of Behler, Homan and Berger resulted from her discovery of their allegedly inappropriate activities at work. Grice has provided no evidence that Homan's animus towards her, if any, was based on gender. In short, the record does not show that the County's explanation for hiring Underwood is a mere pretext for gender discrimination. As the district court stated, "[a] showing of bias is not sufficient to prove that an employer has violated

11

Title VII [or § 1983] unless the bias is based on the plaintiff's membership in a protected class." J.A. 750-51.

For the foregoing reasons the district court did not err in finding that Grice failed to establish pretext for the legitimate, nondiscriminatory reasons for selecting Underwood. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-35 (4th Cir. 1991). The district court did not err in granting summary judgment to the defendants on Grice's non-selection claim under 42 U.S.C. § 1983.

### B. Grice's Discharge Claim

The County has not disputed, either in this Court or below, that it was aware of Grice's EEOC claim (and subsequent amendments) or that filing the claim constituted protected activity. In addition, the district court determined that Grice had "alleged sufficient evidence of retaliatory animus . . . to meet the minimal burden required . . . ." J.A. 757. Despite its finding that Grice had made a prima facie case of discrimination, the district court granted summary judgment on the discharge claim because, as with her non-selection claim, Grice failed to provide a preponderance of evidence that the County's reasons for her discharge were pretextual. For the reasons that follow, we agree with the district court.

12

The district court found the County had "consistently stated that the reason for termination was Grice's insubordination in refusing to meet with Dorsey and Niles without her attorney present and her refusal to take from Dorsey the materials to be discussed at the meeting." J.A. 758. Though Grice argued the County had "ever-shifting reasons" for firing her, which indicated pretext, the district court correctly concluded that the "minor discrepancies" she cited were not evidence of pretext. J.A. 757-58. See Holland v. Washington Homes, Inc., 487 F.3d 208, 216 (4th Cir. 2007) ("'Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.'") (quoting Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006)).

Grice's Notice of Dismissal states that her "refusal to meet with her supervisor . . . as well[] as the refusal to take a copy of the items to be discussed in the meeting constitutes an act of insubordination." J.A. 437 (emphasis added). During his deposition Dorsey confirmed that after asking Grice to attend the meeting several times he acceded to her demands to have her attorney present. J.A. 585-86. Grice contends that

13

this admission by Dorsey "should have been dispositive of summary judgment, because the Appellants did not assert that Grice would have [been] fired simply – and solely – because she did not take the materials." Br. of Appellant at 29. Once it became clear that Grice was not going to attend the meeting without her attorney, we fail to see how Dorsey's acquiescence to a postponement is material in light of her undisputed refusal to take the papers as instructed. According to the County's rules, an employee can be "dismissed for cause if she fail[s] to obey any lawful and reasonable direction given by [her] supervisor." J.A. 757 (internal quotation marks omitted). Her failure to take the documents as directed clearly supports the County's finding of insubordination while Dorsey's acquiescence, under these factual circumstances, does nothing to prove the County's rationale for discharging her was a mere pretext for sex discrimination.

Aside from her failure to come forward with evidence undermining the County's legitimate reasons for her termination, Grice's discharge claim fails for another reason. As with her non-selection claim, her own pleadings and testimony prove fatal. Grice asserts in her Amended Complaint that she

> was treated less favorably than other employees . . . by defendant Homan because defendants Homan and Berger were involved in a close personal relationship . . . was treated adversely by defendant Homan in retaliation for reporting [Behler's] alleged

14

> involvement with a female subordinate . . . and . . . was removed from her position . . . by defendants Homan and Berger because she discovered their after-hours conduct at a time when their close personal relationship was a tremendously sensitive issue in county government.

J.A. 14. Grice is bound by her own allegations. See Lucas, supra.

In addition to the allegations contained in her pleadings, Grice testified that she "firmly believe[d]" her firing went "back to April of 2005 when [she] walked in on [Homan and Berger] after work" in a compromising position. S.J.A. 180-81. When asked why she thought Berger had discriminated against her, Grice stated that it was in Berger's "best interest not to have [Grice] there because [she] walked in on Fred Homan and Suzanne Berger in a compromising position." S.J.A. 208. Asked if she thought it would have been different "had a man walked in on them," Grice testified that "it would have been the same if it had been anyone, but I also think the sequence of events afterward were [sic] handled differently with me because I was a woman rather than someone else if they had been male." S.J.A. 208 (emphasis added).

Grice's belief, however, is insufficient to undermine the legitimate, non-discriminatory reasons put forth by the County, particularly in light of the fact that the parties do not dispute the sequence of events at the June 13, 2007 meeting.

15

See Williams, 871 F.2d at 456 ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.") (citing Gairola v. Comm. of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1288 (4th Cir. 1985)).

An examination of the record in this matter does not reveal evidence to support Grice's contention that the County's reason for her discharge served as a pretext for discrimination based on gender. Indeed, Grice's own pleadings and evidence indicate that Homan's motivation to retaliate arose, if at all, from an entirely nondiscriminatory motive (that Grice allegedly interrupted Homan during inappropriate workplace behavior). Any such motivation, however, does not support a claim of unlawful discrimination. "[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997).

For the reasons set forth above, the district court did not err in granting summary judgment.

III.

For the foregoing reasons we affirm the judgment of the district court.

AFFIRMED